People of the State of Illinois ex rel. Joseph Coleman, Appellant, v. Harry A. Lipsky et al., Election Commissioners of Chicago, and Joseph P. Geary et al., Civil Service Commissioners of Chicago, Appellees.

Gen. No. 40,860.

Opinion filed November 20, 1940. Rehearing denied December 11, 1940.

MICHAEL F. RYAN, of Chicago, for appellant.

BARNET HODES, Corporation Counsel, for certain appellees; ALEXANDER J. RESA, Assistant Corporation Counsel, of counsel.

BENJAMIN S. ADAMOWSKI, FRANCIS X. BUSCH and CASSIUS M. DOTY, all of Chicago, for certain other appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

On December 12, 1938, relator filed a petition in the circuit court of Cook county, praying that a writ of mandamus issue to compel the Board of Election Commissioners of Chicago and the Civil Service Commissioners of Chicago to cause offices, positions and places of employment with the election commissioners to be filled in accordance with the act to regulate the civil service of cities. The court sustained motions by the defendants to dismiss the petition. Relator elected to stand by the petition, which was accordingly dismissed, and judgment rendered against him, to reverse which this appeal is prosecuted. In the trial court the defendants, constituting the Board of Election Commissioners, and the defendants, constituting the Civil Service Commissioners, filed separate motions to dismiss. The Civil Service Commissioners did not file a brief. They filed a statement which reads:

"In the trial court these appellees considered it to be their duty to interpose such a defense as would present the question of law now submitted to this Honorable Court for its decision, and they accordingly did interpose such a defense. Now that the law necessary to be considered in the decision of said question has been sufficiently brought to the attention of this Honorable Court by the briefs filed herein (although these appellees do not concur in all that is said by way of argument in the brief for the other appellees) these appellees regard it as unnecessary for them to participate further in this litigation excepting to abide by and comply with any decision which this Honorable Court may render herein and therefore they file no brief."

The first point urged by relator is that the motions to dismiss should not have been entertained by the court because such motions did not specifically point out the defects complained of, as required by section 45 of the Civil Practice Act (par. 169, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.045]). We have carefully read the petition and the motions to dismiss and find that such motions substantially comply with the requirements of section 45 of the Civil Practice Act.

The second point presented by relator is that the petition alleges that relator is a resident, a citizen and a taxpayer of the city of Chicago, and that he has a right to file the petition in the name of the People of the State of Illinois. Defendants answer that their motion to dismiss did challenge the plaintiff's right to file the petition. They say, however, that they did not argue the point, and that they are not relying thereon.

The third point advanced by relator is that mandamus proceedings may be instituted for the enforcement of a public right without the making of a demand. Defendants assert that no such point was argued or considered in the trial court, and that they are not relying on such point. Hence the second and third propositions advanced by the relator are not challenged and need not be discussed.

Relator maintains, as a fourth point, that the City Civil Service Act regulates the manner of making appointments to fill subordinate positions under the Election Commissioners of Chicago. He cites sections 3 and 11 of the City Civil Service Act (pars. 41 and 50, ch. 24½, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 23.042, 23.051]). Section 3 provides that the Civil Service Commissioners "shall classify all the offices and places of employment in such city with reference to the examinations hereinafter provided for, except those offices and places mentioned in section 11 of this

act. The offices and places so classified by the commission shall constitute the classified civil service of such city; and no appointments to any of such offices or places shall be made except under and according to the rules hereinafter mentioned.'' Section 11 provides that ''Officers who are elected by the people, or who are elected by the city council pursuant to the city charter, or whose appointment is subject to confirmation by the city council, judges and clerks of election, members of any Board of Education, the superintendent and teachers of schools, heads of any principal department of the city, members of the law department, police officers above the grade of captain, and one private secretary of the mayor, shall not be included in such classified service.'' Relator asks us to note that judges and clerks of election are expressly mentioned as employees of the city who are excluded from the classified service, and argues that from such exclusion it follows that subordinate employees of the election commissioners, other than judges and clerks of election, should be included in the classified service. He urges that reading sections 3 and 11 together, in connection with the rest of the act, it is to be inferred that the legislature considered that the employees of the election commissioners were city employees, for otherwise there would have been no necessity to place the exception in section 11 as to judges and clerks of election. In support of this argument he calls attention to the case of *People ex rel. Redman v. Board of Trustees of University of Illinois,* 283 Ill. 494. In that case the Supreme Court stated that in order to obtain the true intent of the legislature as to the construction of sections 3 and 11 of the State Civil Service Act (the language of which is similar to the same sections of the City Civil Service Act), it is necessary to consider section 3 in connection with section 11 and all of the other provisions of the act. The court concluded that the legislature considered the employees

of the University of Illinois as State employees and to be under the Civil Service Act. Relator also points out that the petition avers that the annual appropriation ordinance of the city of Chicago for 1938 appropriated for the Board of Election Commissioners the sum of $1,119,205 for the payment of salaries for one year for numerous subordinate employees under such election commissioners, and that the city contributed to the annuity and benefit fund of the Board of Election Commissioners in accordance with the act creating the Board of Election Commissioners' Annuity and Benefit Fund. (Ch. 46, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 43.001 *et seq.*].) Finally, relator declares that any provisions in the city election law in regard to the manner of appointment of subordinate employees of the election commissioners were repealed by the City Civil Service Act, in so far as such provisions were inconsistent with the latter statute. He maintains that no matter how the subordinate positions under the election commissioners were filled under the city election law, said positions should be filled after the adoption of the City Civil Service Act, in accordance with the provisions of the later act. In support of this position, he cites *People v. Loeffler,* 175 Ill. 585. Under the provisions of the Cities and Villages Act, in force prior to the adoption of the Civil Service Act, the comptroller, the clerk, the treasurer and collector were required to appoint such clerks and subordinates as the city council might authorize. In the *Loeffler* case the Supreme Court held that such provision of the Cities and Villages Act was necessarily repealed by implication by the adoption of the City Civil Service Act, and that under the provisions of the latter act the clerks and subordinates in the offices of the city clerk, comptroller, treasurer and collector became subject to classification. Relator insists that the circumstance that the election commissioners are authorized by the Election Act to appoint the sub-

ordinates, can have no bearing upon the question whether such subordinates should, after the adoption of the City Civil Service Act, be appointed in accordance therewith.

Defendants meet the argument of relator by asserting (1) that the Board of Election Commissioners of the city of Chicago is an independent statutory board, created by the City Election Act, to conduct elections as the agency of and subject to supervision by the county court of Cook county, and, as such, is not a branch or department or part of the government of the city of Chicago as a municipal corporation; (2) that the City Civil Service Act regulates appointments to offices and places of employment in the service of the city, but cannot be deemed to extend to the employees of the Board of Election Commissioners as an agency of the county court, and (3) that the provisions of the City Election Act in regard to the manner of appointment of the clerks and employees of the election commissioners have not been repealed by the City Civil Service Act. It is necessary, therefore, to consider the history of the various enactments pertaining to elections and civil service in order that we may better understand the intent of the legislature. The City Election Act was passed by the General Assembly at its regular session in 1885 and was approved by the Governor on June 19, 1885. It was adopted by a referendum vote of the city's electors on November 3, 1885. On the same day it was also adopted by the electors of the town of Lake, now a part of the city, but at that time a separate municipality. Prior thereto all national, State and county elections in Chicago and in all other cities, villages and incorporated towns in Cook county had been conducted by the county clerk under the provisions of the General Election Law of 1872 and the General Registration Law of 1865. City elections had been conducted by the municipal officers of the city, particularly the city clerk, under the pro-

visions relating to elections then to be found in the Cities and Villages Act under which the city had been reincorporated in 1875. The City Election Act of 1885, following its adoption that fall by the city of Chicago and the town of Lake, divested the municipal officers of such city and town of all control that they had theretofore exercised over elections, and vested in the election commissioners, as a single separate statutory agency, full control over the conduct of all elections, national, State, county, municipal and judicial, which might thereafter be held in such city and town. The Supreme Court in *People ex rel. Broomell v. Hoffman,* 322 Ill. 174, said: ''The City Election act is therefore, in a municipality which has adopted it, applicable alike to all elections, whether held to choose public officers or to pass upon some measure or proposition submitted by proper authority. The legislative intent, manifested by the express provisions to which reference has been made, is that in such a municipality only a single agency for the conduct of elections shall exist.'' The Supreme Court in *People v. Ladwig,* 365 Ill. 574, pointed out that it was intended by the City Election Act to put election machinery under the supervision of the court in the interest of honest elections. In each city, village or incorporated town which adopts the City Election Act, there is to be created a board of three election commissioners. Each election commissioner is appointed by the county court of the county wherein such city, village or incorporated town is located, and when qualified, each commissioner is declared to be an officer of the county court. Two of such commissioners at least shall always be selected from the two leading political parties of the State. The commissioners are required to be legal voters and persons of well-known political convictions. Each commissioner is appointed for a definite term of three years, with the expiration of the respective terms so staggered that only one such term of office will expire

in any year. Each board of election commissioners is thereby made a continuous body. The judge of the county court may at any time, upon complaint and after notice and opportunity to be heard, remove any election commissioner for cause. The election commissioners, therefore, are appointed by the county court, and under proper circumstances may be removed by that court, and are declared to be officers of that court. The plan for control and supervision of the election machinery by the county court and for representation of the two leading political parties extends to all precinct judges and clerks of election and to all registration officers. All such judges and clerks of election are required to be selected from the two leading parties of the State. All judges and clerks are examined and selected by the election commissioners, who report to the county court. Then all such judges and clerks are appointed, confirmed and commissioned by that court. When qualified they become officers of that court. Registration officers for all general or precinct registration of voters are selected, appointed, confirmed and commissioned in like manner as judges and clerks of election. Section 6 of article 2 of the City Election Act (par. 179, ch. 46, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 43.270]), provides that "Said board shall have the right to employ a chief clerk who shall have charge of the office of said board and who shall be present and in attendance at all proper business hours. . . . The board may employ an attorney who shall advise and represent such board in all cases where the advice or services of an attorney are necessary. Such additional assistance may be employed by said board from time to time, as may be necessary, with the consent and approval, previously entered of record by said county court or which may afterwards be approved by such court." The act provides that all such additional employees shall be employed by the election commissioners, with the consent

or approval of the court. No distinction is made between the power of the election commissioners to employ a chief clerk and an attorney, and their power to employ such additional assistance from time to time as they may deem necessary. Relator's petition expressly recognizes that the relief prayed for is not applicable to the chief clerk and attorney. Furthermore, under the Permanent Registration Law, adopted in 1936, each board of election commissioners is required to provide for the permanent registration of all qualified voters. To enable voters to be registered, or to transfer, or alter their registrations under such system, registration offices of the election commissioners must be kept open, with qualified registration officers in attendance, throughout the year, except on certain days preceding each election when the registration lists are required to be closed. All officers and employees of the election commissioners who are authorized to take registrations are expressly made officers of the court and subject to the control and punishment by the court in the same manner as the judges and clerks of election. (Par. 226.3, ch. 46, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 43.322(3)].) The provisions of the act by which the election commissioners and the judges and clerks of election are made officers of the court, have been upheld. (*People v. Hoffman,* 116 Ill. 587; *People v. White,* 334 Ill. 465.)

It is worthy of note that the jurisdiction of the board of election commissioners is not confined to those territories which are within the city, but extends outside of the city and includes such towns and villages in Cook county as have adopted the provisions of the City Election Act. Such board is created in, and derives its name from, the first city or village in the county which adopts the provisions of the act. The territory within the jurisdiction of the Board of Election Commissioners of the city of Chicago has never been merely coextensive with the territory of the city

of Chicago. The members of the Board of Election Commissioners are also *ex officio* election commissioners for the cities of Berwyn, Chicago Heights and Harvey, the town of Cicero and the villages of Summit, Stickney, Morton Grove, Elmwood Park and Niles Center. Since any city, village or incorporated town in Cook county may adopt the act at any time the citizens thereof may see fit, the election commissioners are potentially a single agency for the conduct of all elections within all of the incorporated cities, towns and villages in such county, subject to the supervision and control of the county court.

In reply to relator's contention that the appropriation by the city to pay the compensation of the election commissioners' clerks and employees, is an indication that they are employees of the city, defendants say that such argument ignores entirely the independent nature of the election commissioners as a statutory board, charged with the conduct of all elections held within the city and also within all other cities, towns and villages in Cook county which have adopted the act; ignores the fact that the election commissioners are officers of the county court, and ignores the express provisions of the act authorizing the commissioners to employ such additional assistance as they may from time to time deem necessary. The election commissioners have no money or property out of which to pay the expenses of their office. No authority is conferred upon them to raise money to pay such expenses, or the expenses incurred in conducting any election. (Art. VII of the act, pars. 277 to 281, ch. 46, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 43.373— 43.378].) All election expenses and all expenses to be incurred by the election commissioners under the act are allocated so as to be payable by the county or city, or such other municipality, as is therein required from time to time to pay certain election expenses. The costs and expenses so allocated by the statute in-

clude compensation payable to judges and clerks of election and precinct registration officers, the salaries of the election commissioners, their chief clerk and assistant chief clerk and all the general expenses incurred by them. The appropriation ordinance, in addition to providing for the salaries of judges and clerks of election and employees, also provides for the payment of expenses such as materials, supplies, furniture, printing, stationery, transportation, advertising, telephone service and rental of polling places. Defendants maintain that the fact that the statute requires the city council to make provisions for the payment of clerk hire, does not give the city any control over the employees of the election commissioners any more than the same duty to provide for the rental of polling places would give the city the right to select such polling places, or the duty of paying for the printing of stationery would give the right to select the printer and let contracts for the printing and stationery required by the election commissioners.

The City Civil Service Act became a law in 1895. Shortly after its passage the electors of the city of Chicago decided that their city should come under the provisions of the act. As heretofore stated, section 11 of that act specifies the various offices of employment in the service of the city which are excluded from the act. Defendants point out that if the legislature had believed that the provisions of the act extended to the clerks and employees of the election commissioners, that some mention would have been made for the purpose of exempting the election commissioners, who were then, as now, appointed by the county court. Section 11 does not mention the election commissioners. This omission to mention the election commissioners plainly shows, in our opinion, that the legislature had no intention of extending its provision to the employees of an independent statutory board under the supervision and control of the county court. One of the first cases to arise after Chicago adopted

the City Civil Service Act is reported as *People v. Kipley,* 171 Ill. 44. The Supreme Court held that the City Civil Service Act was constitutional. In *People v. Loeffler,* 175 Ill. 585, the court held that there was a clear repugnancy between certain provisions of the Cities and Villages Act and the later City Civil Service Act, and that because of such repugnancy there was a repeal by implication of certain provisions of the earlier act. In *Brenan v. People,* 176 Ill. 620, the court carefully reviewed the original special charter of Chicago, by which it was provided that the Board of Education should be a department of the city government and that the maintenance of schools was one of the corporate purposes of the city, and also the history of the school law of 1872 and the Cities and Villages Act. The court concluded that the Board of Education remained a department of the city within the meaning of the Civil Service Act. In reading the *Brenan* case, we should bear in mind that section 11 of the City Civil Service Act excludes from the operation of the act members of any board of education and the superintendent and teachers of schools. No one argues that the members of the Board of Election Commissioners or the chief clerk are subject to the City Civil Service Act. Had the General Assembly intended to require the classification of employees of the Board of Election Commissioners under section 3, then certainly the members of the Board of Election Commissioners and the chief clerk would have been excluded under section 11 in like manner as the members of the Board of Education, superintendent and teachers of the schools are excluded. In the cases cited, the Supreme Court stressed the fact that boards of education were expressly included among the classes of municipal officers exempted from the operation of the Civil Service Act.

Relator insists that the exclusion of judges and clerks from the operation of the Civil Service Act shows that the legislature intended that regular clerks

and employees of the election commissioners should be selected from the civil service lists of Chicago. In considering this proposition, it is well to remember that the Civil Service Act is a general optional act which may be adopted by a referendum in any city or village in the State. It has, in fact, been adopted by many cities and villages which have never adopted the City Election Act, for example, the cities of Evanston, Maywood and Blue Island and the villages of Oak Park, Forest Park and Winnetka. All such cities and villages and others which may hereafter adopt the Civil Service Act continue to conduct their national, State and county elections under the General Election Law, and their city or village elections under the provisions of the Cities and Villages Act. Under the latter act the judges and clerks of election at all city or village elections are selected, appointed and paid by the city or village. They are, when conducting such city or village elections, temporary employees of the city or village affected. To provide for the situation so created, it was necessary to include such judges and clerks of election among the exempted classes enumerated under section 11 of the Civil Service Act. Otherwise, such judges and clerks for city and village elections would have come within the Civil Service Act, which is obviously not adapted to their selection. Therefore, the exemption clause (section 11) was necessary, without regard to the status of judges and clerks of election as officers of the county court, in territories where boards of election commissioners have been constituted under the City Election Act. Relator places great reliance on the case of *People ex rel. Redman v. Board of Trustees of University of Illinois,* 283 Ill. 494. There the Supreme Court held that the specific exemption in section 11, wherein the University of Illinois was mentioned by name, made it clear that the legislature considered the employees of the university to be State employees. As heretofore

pointed out, however, boards of election commissioners, as such, are not referred to in the Civil Service Act, and the reference therein to judges and clerks of election was necessarily included for reasons which did not affect the City Election Act, nor the status of the employees of the election commissioners. On the other hand, in *McGann v. People ex rel. Simpson*, 227 Ill. 567, wherein it was sought to compel the clerk of the municipal court of Chicago to appoint his deputies in accordance with the Civil Service Act, the Supreme Court said that to so hold would, in effect, amount to legislating by the court. The same conclusion was reached in *McGann v. People ex rel. Hansen*, 228 Ill. 203, where a similar question was presented concerning the methods to be followed in selecting and appointing deputy bailiffs of the municipal court. In the two cases mentioned the Municipal Court Act provided that deputy clerks and deputy bailiffs were to be appointed by the clerk and bailiff of the court respectively, in accordance with orders entered from time to time by a majority of the judges of the court. Under the City Election Act the election commissioners are authorized to employ such clerks and assistance from time to time as they may deem necessary, with the consent and approval of the county court. The provision is strikingly similar to the section of the Municipal Court Act passed on in the *McGann* cases.

Relator maintains that the provisions of the City Election Act, adopted by the city in 1885, have been repealed by implication, by the city's adoption of the Civil Service Act in 1895. Repeal of laws by implication is not favored. It is only where there is a clear repugnancy between two statutes and the provisions of both cannot be carried into effect that the later law must prevail and the provisions of the former be considered repealed by implication to the extent to which such statutes are inconsistent. Even where two acts are seemingly or apparently repugnant, they should be

so construed, if possible, that the later one may not operate as a repeal of the former by implication, and in all such cases if a construction can reasonably be adopted by which both acts can stand, that construction will be adopted. There must be an irreconcilable repugnancy to justify repeal by implication. *Village of Glencoe v. Hurford,* 317 Ill. 203; *McKean v. County of Carroll,* 324 Ill. 243; *People v. Shader,* 326 Ill. 145; *People v. Goldberg,* 332 Ill. 346; *People v. Board of Ed. of Chicago,* 349 Ill. 390; *People v. West Englewood Trust & Savings Bank,* 353 Ill. 451. The city adopted the City Election Act in 1885, and the Civil Service Act in 1895. Since 1895, however, the legislature has on numerous occasions amended and re-enacted the City Election Act, and reaffirmed its provisions relative to the right of election commissioners to appoint their own employees with the consent and approval of the county court. In *Johnson v. Winnebago County,* 256 Ill. 276, a similar contention was made to the effect that certain provisions in the City Election Act had been impliedly repealed by the passage of the Australian Ballot Act in 1891. In rejecting this contention the Supreme Court said: ''There might be some force to this contention were it not for the fact that the City Election act has been repeatedly amended by the legislature and this provision has each time been carried forward as a part of the act as amended. In 1899, long after the passage of the general Ballot act, the whole of the City Election act was amended and thus re-enacted.'' The latest amendment and reaffirmance of the section authorizing the election commissioners to employ such additional assistance from time to time as they may deem necessary, with the consent and approval of the county court, was in 1927. The provisions of the permanent registration law, by which all employees of the election commissioners authorized to take registrations are expressly made officers of the county court, were added to the act in 1936.

A careful consideration of the statutes involved and of the arguments of counsel, and the authorities cited, convinces us that there is no conflict between the City Election Act and the Civil Service Act, and that the Civil Service Act does not, by implication, repeal the provisions of the City Election Act which empowers the board of Election Commissioners to appoint their employees, with the consent and approval of the county court.

For the reasons stated, the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.