## CULVER *v.* UTHE.

### ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 191. Submitted January 27, 1890. — Decided March 3, 1890.

Swamp lands located on a military land warrant prior to the passage of the swamp land act of September 28, 1850, but patented to the locator subsequently to the passage of that act, were not included in the lands granted by it to the several States.

Section 891 of the Revised Statutes authorizes certified copies of records of the land office at Washington, concerning the location of land warrants, to be introduced in evidence.

The delivery of his warrant by the holder of a land warrant to the proper officers of the government, with direction that it be located on a designated tract of public land, constituted a sale of that tract within the meaning of the act of September 28, 1850, 9 Stat. 519, c. 84, granting the swamp lands to the States.

THE case is stated in the opinion.

*Mr. Morton Culver* for plaintiffs in error.

*Mr. H. B. Hurd* for defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

The writ of error in this case brings before us for review a judgment of the Supreme Court of the State of Illinois. The suit was brought originally by the present defendant in error, Gertrude Uthe, against Morton Culver and Michael Gormley, in which she sought to recover on eleven promissory notes made by them March 23, 1874, all of which were due and unpaid at the commencement of this action, and on which she

claimed to recover the sum of $7000. To this the defendants pleaded, among other defences, that the notes were given as the purchase price of a quarter section of land in Cook County in that State, and that the consideration for which said notes were given, namely, the title to said quarter section, had utterly failed, and that plaintiff had no title to the lands which she sold to the defendants at the time of the sale, or at any other time.

The plaintiff recovered judgment against defendants, notwithstanding this plea, which was affirmed in the Supreme Court of the State, upon a writ of error issued by that court, and it is that judgment which we are called upon to review. 116 Illinois, 643.

The facts out of which the jurisdiction of this court arises, and on which we are to determine whether there is error in the judgment of the Supreme Court, are substantially as follows : The father of the plaintiff Gertrude, in whom the title which she sold to the defendants originated, had a patent from the United States for the land in controversy, dated February 10, 1851, which purported on its face to be issued under the act of Congress of February 11, 1847, 9 Stat. 123, c. 8, on a military land warrant that he had deposited in the General Land Office.

This land warrant was located on the land in question, at the land office of the United States in Chicago, Illinois, on July 10, 1850, under the authority of Uthe himself, and the land warrant certificate was delivered up, and the patent aforesaid issued to him in due time and after the proper course of proceedings. There does not seem to be any valid objection to the mode in which this was done.

The defence relied upon the fact that the land in question, was swamp land within the meaning of the act of Congress of the 28th of September, 1850, 9 Stat. 519, c. 84; that by that statute the title to the land was transferred to the State of Illinois between the time of the location of the military land warrant and the issue of the patent for it to Uthe; and that therefore the title claimed under Uthe utterly failed, being vested by that statute in the State of Illinois, the act being a grant *in præsenti*, and taking effect at its date.

The first section of that act reads as follows:

"To enable the State of Arkansas to construct the necessary levees and drains to reclaim the swamp and overflowed lands therein, the whole of those swamp and overflowed lands, made unfit thereby for cultivation, which shall remain unsold at the passage of this act, shall be, and the same are hereby granted to said State."

The act is extended by its fourth section to the other States of the Union in which there were swamp lands belonging to the United States, including the State of Illinois, and the argument of the defendant in error is that by reason of the location of the military land warrant of Uthe on this land on the 10th day of July, 1850, nearly three months before the passage of this act, it had been sold to Uthe, within the meaning of the statute; and this is the principal question which we have to decide.

There does not seem to be any doubt that the land in controversy was swamp land, within the meaning of the act of Congress, and if the location by Uthe of his land warrant did not create a right to the land which excludes it from the grant to the State by Congress, the plaintiff Gertrude had no title, and the defence should have been sustained.

The first objection taken to the claim of Uthe was to the introduction in evidence of the certified copy of the records of the Land Office of the United States at Washington, concerning the location of the land warrant by Uthe. This transcript is certified by L. Harrison, Acting Commissioner of the General Land Office, under the seal of his office, and contains the various acts of the register and receiver of the land office at Chicago and of Uthe, in regard to the location of the land, showing that it was subject to location at the time, and that the land warrant was properly delivered up and deposited with the Commissioner of the Land Office.

The objection made in the brief of counsel to the reception of this copy is not very clearly stated. It is said that a simple inspection both of the United States statute and of the Illinois statute would show conclusively that it could not be admitted under either of them, and reference is made to section 20,

chapter 51, of the Revised Statutes of Illinois, and section 906 of the Revised Statutes of the United States. But section 891 of the latter statutes is ample authority for the introduction in evidence of the transcript of the General Land Office in the present case. It reads as follows:

"Copies of any records, books or papers, in the General Land Office, authenticated by the seal and certified by the Commissioner thereof, or, when his office is vacant, by the principal clerk, shall be evidence equally with the originals thereof. And literal exemplifications of such records shall be held, when so int oduced in evidence, to be of the same validity as if the names of the officers signing and countersigning the same had been fully inserted in such record."

There is therefore no error in the admission of this transcript in evidence.

As regards its effect upon the rights of the parties, it seems to us it shows that under an act of Congress which authorized it to be done, Uthe, by directing his land warrant to be located upon this land and delivering up the warrant, and by the proceedings of the land office upon that location, which resulted in issuing a patent to him for the land, had acquired an equitable title to the land, or what may be called a vested interest in it, prior to the passage of the swamp land act by Congress. He had done what by the act of Congress of 1847 entitled him to the land on which his warrant was located. He had delivered up the land warrant, the evidence of his claim against the government. He had received in exchange for it the certificate of the receiver and register of the land office, and these entitled him to a patent after such delay as was necessary to ascertain the fact that the land had been granted to no one else, and that all his proceedings were regular, which facts were to be determined by the Commissioner of the General Land Office, and which were determined in his favor. He had paid for this land. He had paid by the delivering up and cancellation of his land warrant. He had received the certificate of the register and receiver of the land office at Chicago, which, by the laws of nearly all the Western States, have been made equivalent to a title to the land in actions of ejectment,

though the strict legal title remained in the United States at the date of the passage of the swamp land act.

Are we to suppose that Congress intended to give to the State of Illinois the land which it had already, by a contract for which value was received, promised to convey to Uthe? As the grant to the States of the swamp land within their jurisdiction was a gratuity, although accompanied with a trust for the reclamation of said land, it is not easily to be supposed that Congress intended to be thus generous at the expense of parties who had vested rights in any of the lands so donated, derived from the United States. It would be a matter of considerable doubt whether such an inference, that Congress intentionally violated its contract, would be indulged, if there were no words of reservation in the statute. But when we find the broad declaration made that the grant only includes those swamp and overflowed lands made unfit thereby for cultivation, which shall remain unsold at the passage of the act, we do not have much difficulty in holding that this land was not unsold within the meaning of the statute. It is true that in a technical sense, and where a due regard to the intention of the parties using the word "sold" is had, it may mean a transfer of the title of property for a money consideration. Yet, it has other meanings which would include the present transaction, when it is obvious that such was the intent of the party using the phrase. We cannot doubt that the delivery by Uthe of his land warrant to the proper officers of the government, with a direction that it be located on this land, and the paper which they issued to him, showing that he had thereby acquired the right to a patent for the land, constituted a sale within the meaning of the act of Congress granting the swamp lands to the States. The cases of the *States of Iowa and Illinois* v. *McFarland*, 110 U. S. 471, 482, it is true, give a different construction to the word "sale" in an act of Congress concerning certain sales of public lands. But the intent of Congress in that case was relied on as indicating that the word "sale," as applied to a disposal of the public lands by the government, was limited to sales for cash. The following language, used in the opinion in that case, indicates this very clearly:

" When each of these acts speaks of lands 'sold by Congress,' 'five per cent of the net proceeds' of which shall be reserved and be 'disbursed' or 'appropriated' for the benefit of the States in which the land lies, it evidently has in view sales in the ordinary sense, from which the United States receive proceeds, in the shape of money payable into the treasury, out of which the five per cent may be reserved and paid to the State; and does not intend to include lands promised and granted by the United States as a reward for military service, for which nothing is received into the treasury."

In the present case, the act which we are now construing does not contemplate the receipt of any money into the treasury of the United States, nor the payment of any money out of it, in regard to these swamp lands. We feel at liberty, therefore, to construe the statute as intending to exclude from the grant all the swamp and overflowed lands for which it had, by contract, given a vested right, for a valuable consideration, to individuals before the passage of that act.

The decision of the Supreme Court of Illinois, which affirmed the action of the lower court, founded on this principle, is sound, in regard to the questions which we have power to review, and its judgment is therefore *Affirmed.*