People of the State of Illinois ex rel. Louis De Boer et al., Appellants, v. Joseph P. Geary et al., Appellees.

Gen. No. 42,326.

Opinion filed May 1, 1944.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, of Chicago, for appellants; ANAN RAYMOND and ALBERT E. JENNER, JR., both of Chicago, of counsel.

BARNET HODES, Corporation Counsel, for appellees; JAMES A. VELDE, FRED V. MAGUIRE, CARL H. LUNDQUIST and L. LOUIS KARTON, Assistant Corporation Counsel, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

Petitioners appeal from an order sustaining respondents' motion to strike and dismiss petitioners' first amended petition for mandamus to compel the respondents to require the places and positions of employment in the Chicago Relief Administration to be classified in the civil service under the City Civil Service Act (Ill. Rev. Stat. 1943, ch. 24½, pars. 39–77 [Jones Ill. Stats. Ann. 23.040–23.079]) and dismissing the petition.

In February 1932 the Illinois Emergency Relief Commission was created to provide relief to residents of the State of Illinois who, by reason of unemployment or otherwise, were destitute and in necessitous circumstances and, to that end, to make use of and co-operate with counties, townships and any other municipal corporations charged by law with the duty of providing relief, and with other local relief agencies. (Laws of Illinois, 1932, 3rd special session, page 191.) The life of the commission was limited to March 1, 1933, but was extended from time to time until in 1941 it was superseded by the Illinois Public Aid Commission, a permanent body. (Ill. Rev. Stat. 1941, ch. 23, pars. 393, 394 [Jones Ill. Stats. Ann. 18.124, 18.125].) Prior to the creation of the relief commission the duty of relieving and supporting poor and indigent persons was imposed on counties and townships. (Ill. Rev. Stat. 1933, ch. 107, pars. 14, 15.) In 1935, by amendment of section 14 and repeal of section 15 of the Paupers Act, the duty of relieving and supporting all poor and indigent persons lawfully resident therein was imposed on the counties. (Ill. Rev. Stat. 1935, ch.

107, pars. 14, 15.) At the second special session of the legislature in 1936 a number of the sections of the Paupers Act were amended and other sections added. (Laws of Illinois, 1935, 1936, 2nd special session, pages 73–78.) We are concerned only with amended section 14 and added sections 14a and 17a. By amendment to section 14, counties not under township organization were exempted from the duty "to relieve and support poor and indigent persons lawfully resident therein who are also lawful residents of any city, village or incorporated town having a population of more than 500,000 inhabitants and located within or partly within such county," and by added section 14a the duty to relieve and support their poor and indigent residents was imposed on such cities, villages and incorporated towns. Added section 17a required such cities, villages and incorporated towns having a population of more than 500,000 inhabitants to "provide by ordinance for the appointment of an overseer of the poor or like officer and for such other employees and assistants as may be necessary to properly relieve and support the poor and indigent persons lawfully resident therein." At the same session of the legislature the act creating the Illinois Emergency Relief Commission was amended to terminate its direct administration of local relief after July 1, 1936 and to make provision for allocation of moneys paid over to the county treasurer for purposes of relief, to governmental units other than the county—such as the City of Chicago—required by law to provide relief and support. (Laws of Illinois, 1935, 1936, 2nd special session, pages 27–29.) To meet this statutory obligation the City of Chicago by ordinance July 1, 1936 created the office of Commissioner of Relief. This ordinance provided that the commissioner "shall appoint, *according to law,* such assistants, clerks and subordinates in his office as may be authorized from time to time by appropriation ordinances, and he may re-

move any such appointees *according to law.*" ‧ (Italics ours.) Thereafter, by sundry appropriation ordinances, the city from time to time appropriated taxes levied by it, pursuant to section 16—2 of the Cities and Villages Act (Ill. Rev. Stat. 1943, ch. 24, art. 16, par. 16–2 [Jones Ill. Stats. Ann. 21.1402]), as well as State funds allocated to the city and paid into the city treasury, for the employment and payment of the employees under the Commissioner of Relief in the Chicago Relief Administration. In 1941 these employees exceeded 2900 in number and consisted of chiefs of divisions, supervisors, directors, case workers, investigators, stenographers, clerks and other office help, messengers, maintenance men, janitors, skilled tradesmen and engineers. The annual payroll was in excess of $3,000,000.

In 1895 the City of Chicago adopted the Civil Service Act. (Ill. Rev. Stat. 1943, ch. 24½, pars. 39–77 [Jones Ill. Stats. Ann. 23.040–23.079].) Section 3 of that act [Jones Ill. Stats. Ann. 23.042] requires that the civil service commissioners "shall classify all the offices and places of employment in such city with reference to the examinations hereinafter provided for, except those offices and places mentioned in section eleven of this act. The offices and places so classified by the commission shall constitute the classified civil service of such city; and no appointments to any of such offices or places shall be made except under and according to the rules hereinafter mentioned." Section 11 [Jones Ill. Stats. Ann. 23.051] exempts from the classified service "Officers who are elected by the people, or who are elected by the city council pursuant to the city charter, or whose appointment is subject to confirmation by the city council, judges and clerks of election, members of any Board of Education, the superintendent and teachers of schools, heads of any principal department of the city, members of the law

department, police officers above the grade of captain. . . . ''

Respondents confine their argument here to the contention that a correct construction of the applicable statutes is, that the employees of the office of the Chicago Commissioner of Relief were not intended by the legislature to be subject to the civil service law. They argue that this intent is established by the fact that the Chicago Commissioner of Relief is successor to and co-ordinate with agencies not under civil service, by the language of section 17a of the Paupers Act, by circumstances attending the enactment of that section, and by other aids to statutory construction. Their claim that the Commissioner of Relief is successor to agencies not under civil service is not supported by the facts. The Illinois Emergency Relief Commission ceased the direct administration of local relief July 1, 1936. Up to that time the Cook County Bureau of Public Welfare was the agency through which the State administered relief within Chicago and Cook county. Its employees were and are under civil service. (Ill. Rev. Stat. 1943, ch. 34, par. 67d [Jones Ill. Stats. Ann. 18.060].) Since July 1, 1936 relief of residents of Chicago has been administered by the Chicago Relief Administration, under the direction of the Commissioner of Relief. Respondents claim that he is the successor to the State commission. In 1932 the secretary (not a member) of the State civil service commission took the position that the employees of the State relief commission were not under the State Civil Service Act. In 1935 the Attorney General gave an opinion that such employees should be classified under the civil service law. This was never done. Respondents say "It is immaterial here whether or not the employees of the State commission should have been classified. The important fact here in seeking the intention of the legislature in providing for the

creation of the Chicago Commissioner of Relief is that the employees of the State commission were actually not classified.'' With this we cannot agree. Intent of the legislature cannot be predicated upon misinterpretation of the law (*People v. Sergel*, 269 Ill. 619, 624), and certainly not upon wilful disobedience of it. An examination of the State Civil Service Act confirms the opinion of the Attorney General, which is in accord with the decision in *Kraus v. Singstad*, 275 N. Y. 302, holding that employees of the emergency relief agency of New York should be classified under civil service.

Neither can we give weight to respondents' claim that the Chicago Commissioner of Relief is co-ordinate with the agencies established for towns or precincts. The latter agencies are created for governmental divisions of little population as compared with Chicago, and their problems and needs are dissimilar to those of a Commissioner of Relief in a metropolitan area. This difference between the problems of Chicago and Cook county and the remainder of the State has long been recognized by the legislature and the courts and is evidenced by the number of statutes made applicable only to Chicago and Cook county by limiting them to cities or counties having a population in excess of 500,000. It was recognized in the Paupers Act, where three distinct agencies for relief were created. The reasons which might make civil service advisable and practicable in agencies of more than 2900 employees would hardly be applicable to agencies of one or not more than 15 or 20 employees. No inference that the legislature intended to exclude the employees in the Chicago Relief Administration from the civil service law can be drawn because there is no civil service law applicable to employees of towns and precincts administering relief.

Respondents stress that part of section 17a which requires the city council to ''provide by ordinance for

the appointment of an overseer of the poor . . . and for such other employees and assistants as may be necessary to properly relieve and support the poor and indigent persons lawfully resident therein,'' and say, ''The legislature intended by this language to grant to the city council the power to provide for the appointment, the terms of employment, and the method of obtaining and terminating the employment of employees and assistants.'' In support of this position they quote from *Chicago Dock & Canal Co. v. Garrity*, 115 Ill. 155, 163, 164, where the court, in considering the phrase ''to provide for . . . the location . . . of any railroad,'' in the Cities and Villages Act, said: '' 'To provide for,' implies, of necessity, power 'to direct and control.' '' They also cite cases from other jurisdictions where the word ''provide'' was used in a like connection. In all these cases the word was given a liberal interpretation to effect the purposes of the respective statutes. The same word may mean one thing in one statute and a different thing in another, dependent upon the connection in which the word is used, the object or purposes of the statute and the consequences which will probably result from the proposed construction. *Gormley v. Uthe*, 116 Ill. 643, 648. When section 17a was passed by the legislature the Civil Service Act had been in force in the City of Chicago over 40 years. Under it a method existed for providing a list from which employees and assistants to the Commissioner of Relief could be appointed, and a procedure had been established for terminating their employment. The Civil Service Act made no provision for determining the number of employees, fixing their compensation, hours, etc., and making appropriations for their payment. These matters were outside the Civil Service Act, and provision for them had to be made if employees and assistants were to be available to the Commissioner of Relief. In the absence of express language

indicating the intent, it will not be presumed that the legislature intended to grant greater power to the city council in providing for employees and assistants than was necessary to effect the purposes of the statute, especially when, as respondents claim, the result will be to repeal by implication the earlier provisions of section 3 of the City Civil Service Act [Jones Ill. Stats. Ann. 23.042]. Repeals by implication are not favored. *City of Chicago v. Hastings Exp. Co.,* 369 Ill. 610, 615. It is only when there is such a clear repugnancy between an earlier and a later statute that the latter cannot be carried into effect that the former is repealed or amended. *People v. Burke,* 313 Ill. 576, 579; *People v. Illinois Cent. R. Co.,* 314 Ill. 339, 342. If two constructions are possible, the one which operates to support the earlier act must be adopted. *People v. United Medical Service, Inc.,* 362 Ill. 442, 450; *People v. Board of Education of Chicago,* 349 Ill. 390, 400. If the two acts can stand together it is immaterial that the later act is special and the prior act is general. *People v. Singer,* 288 Ill. 113, 123. The city council did not interpret section 17a as giving it power to provide for the appointment and discharge of employees and assistants to the Commissioner of Relief independent of the Civil Service Act. In the ordinance creating the office it gave the commissioner power to appoint and to remove the appointees ''according to law,'' and the only law regulating the appointment and removal of the employees of the City of Chicago was the Civil Service Act.

Respondents cite *McGann v. People ex rel. Simpson,* 227 Ill. 567, and *McGann v. People ex rel. Hansen,* 228 Ill. 203, as completely supporting their contention. These cases relate to deputy clerks and deputy bailiffs of the municipal court of Chicago. The statute creating the court provided that the clerk and bailiff should appoint such number of deputies as should be determined by a majority of the judges, and that such

deputies should be subject to removal at any time by an order signed by a majority of the judges of the municipal court. The Supreme Court held that these deputies were not under civil service and that the statute was not open to construction. Neither of these cases, nor the case of *People ex rel. Coleman v. Lipsky,* 307 Ill. App. 137, relating to the employees of the Board of Election Commissioners of the City of Chicago, who are under the control of the county court, is applicable to the present case. In further support of their position respondents urge the doctrine of con-temporaneous construction, the professional status of trained social workers and the non-application of civil service laws to persons on work relief. The rule of contemporaneous construction is restricted to doubtful cases (*Chicago Title & Trust Co. v. Central Republic Trust Co.,* 299 Ill. App. 483, 496; *County of Lake v. Westerfield,* 273 Ill. 124, 130), where there is a "con-temporaneous, long, uniform and practical construc-tion." *Nye v. Foreman,* 215 Ill. 285. These essentials are lacking in the present case.

Respondents say that the distribution of relief funds has been in the hands of trained social workers who have a professional status, and "the legislature *may have believed* that professional employees cannot be selected and controlled as efficiently under civil service laws as under the jurisdiction of the city council." (Italics ours.) This argument is based on conjecture as to what the legislature may have believed. Fur-thermore, there is nothing in the qualification of these workers and the nature of the work done by them which would make selection by fitness, ascertained by competitive examination, undesirable or impracti-cable. The employees of the Cook County Bureau of Public Welfare are under civil service. They handle not only relief for needy and indigent persons under the Paupers Act, but perform other social aid and wel-fare services requiring at least equal training and fit-

ness. (Ill. Rev. Stat. 1943, ch. 34, pars. 67a–67j [Jones Ill. Stats. Ann. 18.057–18.065, 67j repealed].) Social workers performing similar services in New York are under civil service. *Kraus v. Singstad,* 275 N. Y. 302. The question of the application of the civil service laws to persons on work relief is not involved. The employees and assistants engaged in administration of relief in Chicago, for whose salaries appropriations are made by the city council, are not needy and indigent persons to whom the Chicago Relief Administration is furnishing aid and support. Their salaries are not determined on a relief basis. *Social Investigator Eligibles Ass'n v. Taylor,* 268 N. Y. 233. The position of respondents is not tenable. The employees and assistants of the Chicago Commissioner of Relief should be classified under civil service. The trial court erred in sustaining the motion to strike and dismissing the petition.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

O'CONNOR, P. J., and MATCHETT, J., concur.