CARROLL, CHAS., Chief Judge.
The appellant, as plaintiff, filed its complaint in the Dade County Circuit Court, for declaratory decree to determine and establish its rights under a real estate brokerage contract.
Plaintiff, a real estate broker, held an exclusive right to sell contract relating to certain acreage of defendant. The contract (par. 4) provided for payment of commission on all consummated sales,[1] and (par. 5) provided that any time the owner wished to end the agreement he could do so, in which event the broker would be entitled to receive $45.40 for each acre remaining unsold.[2]
The owner cancelled the contract, offering to pay $45.40 per acre on the total 375' acres. The termination was effected by a letter dated April 2, 1956, which gave as -a reason the fact that a sale of 263 of the 375 acres was contemplated.[3]
Three days earlier, on March’30, 1956, the owner had entered-into a contract to sell the 263 acres at $2,000 an acre, 'under which the owner had received a $10,000 down payment. $40,000 more was to be placed in escrow on April 6, 1956, and closing was set for 30 days after delivery of abstract.
Under the exclusive right to sell contract, the broker was entitled to a commission on the sale of the 263 acres (payable upon consummation) even though the sale was arranged by the owner and not through the broker’s efforts. Flynn v. McGinty, Fla. 1952, 61 So.2d 318. Cf. Walter v. Libby, 72 Cal.App.2d 138, 164 P.2d 21.
Following trial, the decree was entered on June 4, 1956, providing that plaintiff should receive only the offered $45.40 per acre, and that the 263 acres which were under contract for sale should be considered as “unsold” because such sale had not been consummated prior to the date of termination of the contract and, therefore, that the plaintiff was not entitled to a commission on the 263 acres which the defendant owner had contracted to sell before notice of termination of the contract was given.
On the date the decree was filed, plaintiff moved for, but was denied, permission _ to show that the sale, in fact, had been consummated.
It is our opinion that the trial court erred in failing to declare and decree, as contended for by plaintiff, that it was entitled, on *374 termination of the contract, to its commission on the 263 acres contracted to be sold, if and when the sale thereof was completed.
The owner could terminate the contract with the broker at any time upon paying the broker $45.40 “for each acre remaining unsold.” The provision of the contract relating to commissions, making them payable “upon consummation of any sales” does not force the construction that property which has been contracted to be sold will be considered “unsold” in the event of termination unless the sale thereof as contracted for has actually been closed and consummated prior to termination. Walter v. Libby, supra, 72 Cal.App.2d 138, 164 P.2d 21; Dobbs v. Conyers, 36 Ga.App. 511, 137 S.E. 298. See also, Culver v. Uthe, 133 U.S. 655, 659, 10 S.Ct. 415, 33 L.Ed. 776. Lewis v. Dahl, 108 Utah 486, 161 P.2d 362, 365, 160 A.L.R. 1040. In Dobbs v. Conyers, supra, the Georgia Court said:
“Where such contract of exclusive listing provides that the owner agrees to pay to the real estate agent the 'regular real estate commission if sold by [the agent] or any one else during that time,’ the word ‘sold’ has reference not only to an executed sale by the owner whereby a bond for title or a deed of conveyance is executed and delivered by the owner, but also to an executory contract of sale of the property, made and entered into by the owner.”
Surely, if the sale of the 263 acres had been negotiated by the broker, and the contract of March 30 had been made as the result of the efforts of the broker, the owner could not then have terminated the broker’s exclusive right to sell contract and claimed that the 263 acres were “unsold” so as to deprive the broker of the commission payable (upon consummation) under the exclusive right to sell contract. A contrary rule would reward bad faith on the part of the owner. The law protects a broker against cancellation of his contract which represents a bad faith effort to defeat a commission earned or accrued. See Walter v. Libby, supra, 72 Cal.App.2d 138, 164 P.2d 21; Annotation, 27 A.L.R.2d 1348, Broker’s right to commission on sales consummated after termination of employment, pp. 1357-61. Cf. Hanover Realty Corp. v. Codomo, Fla.1957, 95 So.2d 420, 423.
And yet the broker here was as much entitled to a commission where the owner made a secret contract to sell the 263 acres, as if such sale had resulted from the broker’s own efforts. Flynn v. McGinty, supra, Fla.1952, 61 So.2d 318.
The plaintiff should receive $45.40' per acre for the remaining acreage, other than the 263 acres involved in the March 30' sale, as to which plaintiff should have a commission if the sale thereof is consummated. Evidence offered respecting consummation of the sale having been rejected by the court, additional evidence on that feature would be appropriate, in order to-determine the amount which should be received by the plaintiff as a result of the termination of the contract.
The decree is reversed and remanded for further proceedings not inconsistent with: this opinion.
Reversed and remanded.
HORTON and PEARSON, JJ\, concur..

. “The Owner agrees to pay the Broker upon consummation of any sales the sum of 10% of the selling price of each transaction up to Five Thousand and no/100 ($5,000.00) Dollars, and 5% of all sums in each transaction over the first $5,000.-00.” ■ • ‘

. “In the event the Owner wishes to terminate this contract at any time it may do so upon payment to the Broker of the sum of Forty-five Dollars and 40/100 ($45.40) for each acre remaining unsold in the property above described and upon payment thereof this agreement shall be terminated and all parties released here-from.”

.“In accordance with the agreement of September 26, 1954 between Gables' Venetian-Waterways, Inc., and Aléx D. Smith, under Section 5 thereof, we are enclosing a check drawn by D. B. Caudle in your favor to terminate said agree- ' ment.' '
“The payment amounts to $17,025.00, being based on 375 acres @ $45.40 per acre. The acreage is in accordance with the Maurice H. Connell Associates engineering report.
“It is necessary to terminate your contract because we contemplate sale of some 263 acres in the southern portion of section ‘B’ to another developer who will handle his sales in his own way.”