ILLINOIS RACING BOARD, Plaintiff-Appellee, *v.* ARLINGTON PARK THOROUGHBRED RACE TRACK CORPORATION *et al.*, Defendants-Appellees.—(PYRAMID TROTTING ASSOCIATION, INC., Defendant-Appellant.)

First District (3rd Division)   No. 79-116

Opinion filed September 12, 1979.

Mitchell, Russell and Kelly, of Chicago (Thomas J. Russell and William H. Kelly, Jr., of counsel), for appellant.

Daley, Reilly & Daley, and Goldberg, Kohn, Bell, Black & Rosenbloom, both of Chicago (Thomas D. Nash, Jr., Francis J. Reilly, Thomas J. Cisar, and Emil A. Peterson, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This matter arises from an interpleader action filed by the Illinois Racing Board and involves an interpretation of a part of the Illinois Horse Racing Act of 1975 which created the Illinois Race Track Improvement Fund. (See Ill. Rev. Stat. 1977, ch. 8, pars. 37—1 through 37—51.) The trial court held, in paragraph 1 of its order, that the Improvement Fund is not unitary in nature, but is a divisible fund comprised of the accounts established for the various racing licensees conducting race meetings. No appeal has been taken from that portion of the order, and all the parties apparently agree with the holding. The trial court held, in paragraph 2 of its order, that the monies deposited in the accounts of the licensees shall be distributed from the Improvement Fund for uses specified in the statute and only upon application of the legal or beneficial owner of the track or tracks where such monies were generated. Pyramid Trotting Association, Inc., appeals from that portion of the order limiting the application and use of the fund to the particular race track where the monies were generated. Pyramid is a former racing licensee which does not own a race track. It formerly conducted race meetings as a tenant of a race track owner and accumulated $329,485.73 in its Improvement Fund account. Pyramid seeks to use that fund at any race track in the State as directed by Pyramid and approved by the Board. The Board has not filed an appearance or a brief in this court.

The Act of 1975 created the improvement fund directing the Board to use the fund to aid tracks in improving their facilities. It provided that monies should be distributed to the tracks for the erection, improvement or acquisition of seating stands, buildings, other structures, or land. Under the Act, the improvement fund was created by the organizational licensees of noncharitable racing meetings depositing one-half of the total breakage with the State Treasurer in an account established for each organization licensee. (Ill. Rev. Stat. 1977, ch. 8, pars. 37—28(g),

37—32(b).) Breakage is the odd cents exceeding a multiple of $.10 payable as winnings for each dollar wagered. (See Ill. Rev. Stat. 1977, ch. 8, par. 37—3.02.) Prior to the Act of 1975, each organizational licensee retained one-half of the breakage. Both before and under the Act of 1975, the other half of the breakage returns to the State.

In April 1978, the Board filed the present interpleader action, naming as defendants 29 organization licensees which had conducted race meetings since the Act of 1975 became effective. The action stated that certain of the defendants had requested disbursements, and that one or more of the defendants were maintaining that amounts in their accounts were to be disbursed only upon their request and for their individual use. The Board further stated that it was threatened with lawsuits regarding the fund and requested a judicial determination of the rights of the defendants to the fund.

Several defendants filed answers. Only Pyramid requested that the funds deposited in an account established for an organization licensee be distributed for use only at such race track or tracks as directed for by that licensee and approved by the Board. The other defendants who filed answers either requested that monies in the fund be distributed only upon application of the owner of the track where such funds were generated and for use at that track, or that the defendant had no interest and made no claim to the fund. The trial court decided the matter on the pleadings after hearing argument, and entered the order in question.

The Illinois Horse Racing Act of 1975 provides in pertinent part:

"(a) There is hereby created in the State Treasury a fund to be known as the Illinois Race Track Improvement Fund, referred to in this Section as the Fund, to consist of monies paid into it pursuant to Section 28 [ch. 8, 37—28]. Monies credited to the Fund shall be distributed by the Treasurer on order of the Board.

(b) As provided in Section 28, 50% of the breakage of each meeting except for charity racing meetings shall be collected by the Department of Revenue and deposited with the State Treasurer in an account established for each organization licensee who held such meeting at any track in a given year.

(c) The Racing Board shall use this Fund to aid tracks in improving their facilities.

(d) Monies shall be distributed from the Fund to tracks for the cost of erection, improving or acquisition of seating stands, buildings or other structures, ground or track, for the necessary purchase or required restoration of depreciable property and equipment used in the operation of a race track, or for the payment of the cost of amortization of debt contracted with the approval of the Board for any or all such purposes.

(e) The Board shall promulgate procedural rules and regulations governing information required, deadlines for filing, and types of application forms to be observed by the tracks seeking monies from the Fund.

(f) The Fund shall exist until January 1, 1996. At that time all monies remaining in the Fund shall revert to the General Revenue Fund of the State unless at the end of this 20 year term the General Assembly believes the need for such a Fund still exists and continues the Fund or creates a new one from the monies of the Fund here established.

(g) The Board shall keep accurate records of monies deposited in each account for each licensee. If in any given year a track does not tender any application for monies from the Fund or tenders an application which is not in accordance with the provisions of this Section, the Department of Revenue shall allow such unexpended monies to remain in the account for utilization at a later date in accordance with the provisions of subsections (c) through (e)" Ill. Rev. Stat. 1978 Supp., ch. 8, par. 37—32.

Pyramid contends on appeal that the trial court erred in resorting to rules of statutory construction in determining the rights of the parties to the fund because the statute plainly and unambiguously vested the authority to govern the disposition of the monies in the fund with the organization licensee. Pyramid argues that since the separate accounts in the fund were established in the name of each licensee, the disbursement of those funds was for use at such track as directed by that licensee and approved by the Board.

■■■ Where language employed in a statute is specific and unambiguous, there is no need for judicial interpretation or construction. Where the language employed is susceptible of different interpretations, however, it is incumbent upon courts to construe and interpret the statute so as to effect the intentions of the legislature. (*People ex rel. Skonberg v. Paxton* (1965), 64 Ill. App. 2d 294, 211 N.E.2d 591.) We do not believe that the Act plainly and unambiguously vested the organization licensees with exclusive or concurrent authority over the fund. The mere establishment of a separate account for an organization licensee does not grant the licensee the authority to administer the monies in the fund. The Act requires the Board to keep accurate records of monies deposited in each account, and further requires that the Board shall use the monies to aid race tracks in improving their facilities. It is noteworthy that the Act mandates that it is the race track owners who must submit conforming applications for those funds. While the basis for the creation and use of the fund is clearly set forth in the Act, the interaction among the various participants is not so stated. Accordingly, the trial court properly engaged

in statutory construction in determining the rights of the parties to direct disbursement of the fund.

Pyramid also contends that the trial court erred in construing the Act to limit the application and use of the fund to the track where the fund was generated. Pyramid maintains that the legislature intended to give the licensee control over the direction of the funds and that the trial court's interpretation of the Act renders meaningless its provisions establishing separate accounts in the names of each organization licensee. We do not agree.

In the interpretation and construction of a statute, the intention of the legislature should be ascertained and given effect. (*Young v. Mikva* (1977), 66 Ill. 2d 579, 363 N.E.2d 851.) In ascertaining legislative intent, consideration must be given to the entire statutory scheme, its purposes and objectives. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31.) Courts may also consider the necessity or reason for enacting the statute. *Jewel Companies, Inc. v. Department of Revenue* (1978), 58 Ill. App. 3d 393, 374 N.E.2d 733.

The fund was created by the legislature to encourage the proper maintenance of race track facilities for horse racing operations consistent with the purposes of the Act and to ensure that each race track facility provided safe and adequate accommodations for the benefit and protection of the public, horsemen, track personnel and animals. The fund provided a method of assuring a compulsory program for the improvement and maintenance of race tracks.

■■ A construction of the Act such as that proffered by Pyramid would create a serious gap in the overall objective sought to be attained by the legislature and would largely defeat the purpose of the fund. It would permit organization licensees to designate the particular race tracks to be improved and the amounts allocated to each race track and thereby seriously hamper the administration of the fund in the best interests of horse racing and the public welfare. Conceivably, a less popular race track could receive monies from the fund in excess of the total amount of breakage earned at the track. Pyramid's construction would permit the fund to be used as a lever or bargaining tool in negotiations between licensees and track owners, rather than as a means to properly maintain race tracks. Such results are clearly inconsistent with the manifest intent of the legislature in the administration of the fund. The trial court therefore, correctly held that the funds are to be disbursed at the particular race track where the race money was generated upon application of that track under the supervision and direction of the Board.

Cases cited by Pyramid in support of its position are inapposite to the present case. (See *Southern Maryland Agricultural Ass'n v. United States* (4th Cir. 1955), 227 F.2d 200; *United States v. Maryland Jockey Club* (4th

Cir. 1954), 210 F.2d 367; *Maryland Jockey Club v. United States* (D. Md. 1960), 189 F. Supp. 70.) These cases merely hold that a licensee/track owner is liable for Federal income taxes on monies accrued in a capital improvement fund for race tracks. The cases have not determined questions concerning the control of the fund or the disposition of monies within the fund.

Pyramid's argument that the trial court's decision renders meaningless the provisions in the Act establishing separate accounts in the names of each organization licensee is not persuasive. In construing a statute, each provision and word should be given a reasonable meaning and the statute in question will not be presumed to contain surplusage within its provisions. (*Hirchfield v. Barrett* (1968), 40 Ill. 2d 224, 239 N.E.2d 831; *Tri-County Landfill Co. v. Pollution Control Board* (1976), 41 Ill. App. 3d 249, 353 N.E.2d 316.) We believe that the separate accounts were established in the names of each individual licensee, not as indicia of control, but rather as a means of monitoring the amount of funds available for capital improvements at particular race tracks against the amounts applied for by race track owners, and for general accounting purposes.

Accordingly, the order of the circuit court of Cook County is affirmed.

Order affirmed.

SIMON, P. J., and McGILLICUDDY, J., concur.