MILDRED MACK, Plaintiff-Appellant, *v.* BENJAMIN SEAMAN *et al.*, Defendants-Appellees.

First District (1st Division)   No. 82—0169

Opinion filed February 28, 1983.

David G. Wilkins and James M. Sulzer, both of Strauss, Sulzer, Shopiro & Wilkins, of Chicago, for appellant.

Morgan, Tuchow & Karzov, of Chicago (Arnold J. Karzov and Philip S. Witt, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff-buyer brought suit to rescind a contract for the sale of a dwelling structure by reason of defendants-sellers' failure to comply with "An Act relating to installment contracts to sell dwelling structures" (Ill. Rev. Stat. 1979, ch. 29, par. 8—21 et seq.) (hereinafter referred to as "Code Violation Disclosure Act"). The Act defines "installment contract" and provides that contracts for deeds shall become voidable at the election of the buyer if a certificate regarding government dwelling code violations is not attached to the contract or if the seller does not warrant in the contract either that he has received no notice of code violations within 10 years of the contract date or that all such notices (and violations) are disclosed in the contract. (Ill. Rev. Stat. 1979, ch. 29, par. 8.22.) Defendants do not deny that the subject transaction falls within the definition of installment contract set forth in the statute, nor is there any factual dispute as to defendants' noncompliance with the Act, but, rather, defendants con-

tend that the provisions of the statute are inapplicable to the contract at hand. Defendants claim exemption from the Code Violation Disclosure Act requirements by reasoning that the subject transaction, which involves property held in a land trust, does not fall with the "common and ordinary definition" of a real estate installment contract, as codified in section 1 of "An Act in relation to certain contracts involving property held in land trusts and providing penalties for the violation thereof" (Ill. Rev. Stat. 1979, ch. 29, par. 8.31) (hereinafter referred to as "Land Trust Disclosure Act"). Unlike the definition provided in the Code Violation Disclosure Act, which makes no distinction as to when title to the property passes, the Land Trust Disclosure Act applies only to situations where title to property is retained by the seller until all or a specified portion of the purchase price is paid. Defendants argue that because the instant transaction contemplated the conveyance of title to plaintiff-buyer at closing, with defendants-sellers to take a purchase money mortgage to cover part of the purchase price, it does not fall within the latter definition and, therefore, is not an installment contract.

Defendants' contention is that the very existence of the latter more restrictive definition creates an ambiguity as to the former, and necessarily supersedes it. Defendants also contend that such an interpretation is consistent with the policy behind the Code Violation Disclosure Act.

The trial court originally denied defendants' motion to strike and dismiss plaintiff's fourth amended complaint and subsequently denied plaintiff's motion for judgment on the pleadings on count VI, which is the subject of this appeal. Upon hearing of the plaintiff's motion for clarification of its two earlier rulings, the trial court dismissed plaintiff's count VI, based in part on its reasoning that when a term has been used in "various related statutes" an interpretation of those terms must be given consistent or similar meanings. The court also "noted parenthetically" that the property here was sold "as is," signifying an awareness by both parties of the absence of warranties. We disagree with the trial court's assessment and reverse, based on our finding that the two acts have unrelated and distinct purposes and that a broader definition in one act and a more restrictive definition in the other are reasonably designed to carry out the different mandates of each statute.

It is well settled that statutory language must be given its plain, ordinary meaning and, in enforcing statutory provisions, courts are bound by the clear and unambiguous language of the statute itself. (*Chicago-Midwest Meat Association v. City of Evanston* (1981),

96 Ill. App. 3d 966, 969, 422 N.E.2d 205; *Illinois Racing Board v. Arlington Park Thoroughbred Race Track Corp.* (1979), 76 Ill. App. 3d 289, 292, 395 N.E.2d 93.) Where, however the language employed is susceptible of different interpretations, it is incumbent upon courts to construe and interpret the statute so as to effect the intentions of the legislature. In order to ascertain that intent, it may be necessary to look beyond express words and to consider the prospective and remedial objectives or purpose to be served by the statute. *Illinois Racing Board v. Arlington Park Thoroughbred Racing Corp.* (1979), 76 Ill. App. 3d 289, 292; *Parliament Insurance Co. v. Department of Revenue* (1977), 50 Ill. App. 3d 341, 346, 365 N.E.2d 667, *appeal denied* (1977), 66 Ill. 2d 631.

It is also fundamental that the legislature has the power to articulate reasonable definitions of any terms within its enactment and that such definitions for the purposes of its acts will be sustained to the exclusion of hypothetical indulgences. (*Chicago-Midwest Meat Association v. City of Evanston* (1981), 96 Ill. App. 3d 966, 969; *Bohm v. State Employees' Retirement System* (1949), 404 Ill. 117, 88 N.E.2d 29.) In addition, separate acts with separate purposes need not define similar terms in the same way, but, rather, the same word may mean one thing in one statute and something different in another, dependent upon the connection in which the word is used, the object or purpose of the statute and the consequences which probably will result from the proposed construction. *People ex rel. De Boer v. Geary* (1944), 323 Ill. App. 32, 39, 54 N.E.2d 840; *Gormley v. Uthe* (1886), 116 Ill. 643, 648, 7 N.E. 73, *affirmed* (1890), 133 U.S. 655, 33 L. Ed. 776, 10 S. Ct. 415.

As used in the Code Violation Disclosure Act (unless the context requires otherwise):

> " 'Installment contract' means any contract or agreement, including contracts for deeds, bonds for deeds or any other sale or legal device, whereby a contract seller agrees to sell and a buyer agrees to buy a dwelling structure, wherein the consideration for such sale is payable in installments for a period of at least one year after buyer takes possession of the dwelling structure and the contract seller continues to have an interest, or security for the purchase price or otherwise in that property." (Ill. Rev. Stat. 1979, ch. 29, par. 8.21(e).)

"Contract seller" is defined in the Act as "the owner of a legal or beneficial interest in a dwelling structure, or the owner's agent who executes an installment contract to sell a dwelling structure for the owner." (Ill. Rev. Stat. 1979, ch. 29, par. 8.21(d).) Section 2 relates to

the necessary certificate of compliance regarding dwelling code violations (or alternative warranty of no notice of violations) and specifically states that the requirements of this section cannot be waived by either party. Ill. Rev. Stat. 1979, ch. 29, par. 8.22.

■ The subject transaction clearly fulfills the two criteria of section 1 for installment sales: the contract entered into between plaintiff and defendants provided for a payment term of 10 years and a retention by defendant-sellers of a purchase money mortgage as "security" for the purchase price. The statutory definition does not relate to when title passes or who holds title to the property, but requires only that the seller maintains "security for the purchase price." The plain meaning of the term "security" is "[p]rotection; assurance; indemnification *** usually applied to an obligation, pledge, mortgage, deposit, lien, etc., given by a debtor in order to assure the payment or performance of his debt, by furnishing the creditor with a resource to be used in case of failure in the principal obligation. ***" (Black's Law Dictionary 1216 (5th ed. 1979).) The specific words of a statute are the best indicators of the legislative intent behind the enactment. (*Parliament Insurance Co. v. Department of Revenue* (1977), 50 Ill. App. 3d 341, 345.) It is clear from the unambiguous language of the statute itself that the code violation disclosure requirements of section 2 were intended to apply to the specific situation before us. (Ill. Rev. Stat. 1979, ch. 29, par. 8.22.) We believe this determination to be consistent with the remedial objectives of the Act.

The purpose of the Act, which also applies to property held in land trusts, is to force the seller to furnish information for the protection of the buyer as to the condition of the property he is buying without requiring that buyer to search the records or cause an inspection of the house for possible violations of municipal or county ordinances, as well as of other governmental dwelling authorities, such as State health and fire protection and environmental protection agencies. (*Shanle v. Moll* (1974), 25 Ill. App. 3d 113, 116, 323 N.E.2d 148.) As the trial court correctly recognized, "installment sales" are by their very nature susceptible to a greater degree of seller overreach than are traditional real estate sales. Unlike the traditional sale, there is no third-party bank or lending institution involved in the typical installment sale or purchase-money mortgage situation upon whose experience and self-interest a buyer can also rely for protection. We find that the broad definition of "installment sales" as set forth in section 1 (Ill. Rev. Stat. 1979, ch. 29, par. 8.21) was specifically designed to give added protection to buyers in these situations.

In contrast, defendants urge application of the statutory definition

of "real estate installment contract" set forth in the Land Trust Disclosure Act, which includes

"*** any agreement or contract for a trustee's or warranty deed, or otherwise, under which the purchase price of residential property is to be paid in installments over a period in excess of 5 years with title to the property to be conveyed to the buyer upon his payment of the purchase price or a specified portion thereof." (Ill. Rev. Stat. 1979, ch. 29, par. 8.31.)

This section classifies which installment contracts will be subject to rescission (voidable at the purchaser's option): if the property being sold is under a land trust; if the seller does not disclose the designation of the trust, the names of the trustee and beneficiaries; and if the contract is not signed by the parties having power of direction. (Ill. Rev. Stat. 1979, ch. 29, par. 8.32.) The apparent statutory purpose here is to aid the buyer to gain knowledge of the existence of a land trust in order to protect him from mistakenly dealing with a beneficiary rather than the trustee, who is the proper party to contract. See *Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 260 N.E.2d 431; Gulitz, *Buyer and Seller Protection in Residential Contracts for Deed*, 69 Ill. B. J. 310 (1981).

■ It is clear that the two statutes were enacted at different times, for distinctly different purposes, and we are bound by their mandate to enforce the words of each as plainly written. Defendants failed to comply with the statutory directive (Ill. Rev. Stat. 1979, ch. 29, par. 8.22) by failing to give notice of building code violations. Because the Act specifies that the conditions of section 2 (Ill. Rev. Stat. 1979, ch. 29, par. 8.22) cannot be waived by either party, this omission made the contract voidable at plaintiff's option. Plaintiff is entitled to the return of her earnest money.

For the foregoing reasons the judgment of the trial court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

GOLDBERG and McGLOON, JJ., concur.