**In re Jack D. LANINGA II and Judith Laninga, Debtors.**

**Appeal of FEDERAL DEPOSIT INSURANCE CORPORATION, Appellant,**

v.

**Jack D. LANINGA II and Judith Laninga, Appellees.**

**No. 85 C 1531.**

United States District Court, N.D. Illinois, E.D.

May 15, 1985.

Eric Rein, Berger, Newmark & Fenchel, Chicago, Ill., for appellant.

Stephen Moore, Homewood, Ill., for debtors/appellees.

## MEMORANDUM OPINION
## AND ORDER

GETZENDANNER, District Judge:

This matter is before the court on appeal from the decision of the bankruptcy court denying appellant Federal Deposit Insurance Corporation's motion to modify the automatic stay. Jurisdiction is pursuant to 28 U.S.C. § 158(a). The issue is one of first impression: whether § 9–403(2) of the Uniform Commercial Code requires a secured creditor to file a continuation statement when a financing statement expires before the termination of a bankruptcy proceeding, but after the trustee has abandoned all interest in the collateral.

On July 24, 1978, Universal Clocks, an Illinois corporation in the business of selling and repairing clocks, granted to the First National Bank of Oak Lawn ("the Bank") a security interest in its inventory and accounts receivable as collateral for a $30,000 promissory note. Through its officers, Jack Laninga, Sr. and Anje de Haan, Universal entered into a security agreement with the Bank under which Universal covenanted not to sell, transfer, lease or otherwise dispose of its inventory without the Bank's written consent.

The Bank perfected its security interest by filing a financing statement with the Illinois Secretary of State on August 4, 1978. On February 29, 1980, Universal Clocks executed a second promissory note in the Bank's favor in the sum of $53,000. Repayment of this note was secured in part by the July 1978 agreement.

Appellee and debtor Jack D. Laninga II ("Laninga Jr.") is the son of Jack Laninga, Sr. and was in 1980 employed by Universal

Clocks in the area of service and sales. On or about August 11, 1980, Universal Clocks transferred from its inventory one San Juanbautista Grandfather Clock to Laninga Jr. in lieu of about $5,200 in unpaid wages. At the time of the transfer, appellee was aware of the Bank's loan to Universal, but did not know that the grandfather clock (or indeed any of Universal's inventory) was collateral for the loan. The Bank did not consent to the transfer.

On December 30, 1980, Universal filed a voluntary petition for bankruptcy under Chapter 7. That bankruptcy proceeding is still pending. The Bank meanwhile obtained judgments against Laninga, Sr. and against de Haan in the respective sums of $75,130.88 and $70,533.58. No judgment was entered against Universal due to the pending Chapter 7 proceedings. However, on or about April 5, 1982, an order was entered by the bankruptcy court in which Universal Clocks abandoned all of its interest in its inventory to the Bank to help satisfy the judgments. According to appellant, $65,984.58 remains due and owing on the judgment against Laninga, Sr. and $61,387.28 remains due and owing on the judgment against de Haan.

On April 17, 1982, Jack Laninga Jr. filed a voluntary petition for bankruptcy under Chapter 13. On April 29, 1983, the First National Bank of Oak Lawn went into receivership, and appellant Federal Deposit Insurance Corporation ("FDIC") succeeded to the Bank's interest in the loans to Universal and in the judgments against Laninga and de Haan. The FDIC brought a motion in Laninga Jr.'s Chapter 13 proceedings to modify the automatic stay so that it could sell the clock. The bankruptcy court denied the motion on the ground that the Bank's security interest lapsed when it failed to file a continuation statement within sixty days from the time Universal abandoned all interest in its inventory. This appeal followed.

The bankruptcy court found that Laninga Jr. was a buyer not in the ordinary course of business and purchased the clock without notice of the Bank's security inter-

est. The court also found that transfer of the clock was in violation of Universal's security agreement with the Bank. Therefore, under Ill.Rev.Stat., ch. 26, §§ 9–306(2), Laninga Jr.'s purchase did not extinguish the Bank's security interest in the clock. The parties do not challenge these findings, nor this part of the bankruptcy judge's ruling.

The bankruptcy court nonetheless found Laninga entitled to priority under the rule of Ill.Rev.Stat., ch. 26, § 9–403(2), governing lapse of security interests for failure to file continuation statements. Under that section, a secured creditor whose financing statement lapses is deemed to be an unsecured lienholder even as against persons who become purchasers or creditors before the lapse. Since § 9–301(1)(c) gives all good faith purchasers for value priority over unsecured creditors, the court ruled in appellee's favor. The sole issue on this appeal is whether the bankruptcy court correctly interpreted § 9–403 in finding that the FDIC's interest had lapsed.

Ill.Rev.Stat., ch. 26, § 9–403(2) provides in pertinent part:

> Except as provided in subsection (6) a filed financing statement is effective for a period of 5 years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the 5 year period unless a continuation statement is filed prior to the lapse. If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of 60 days or until expiration of the 5 year period, whichever occurs later. Upon lapse the security interest becomes unperfected ... [and] is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse.

Although the language of this section purportedly continues the effectiveness of a financing statement throughout the pendency of a bankruptcy proceeding, the bank-

ruptcy judge held that the April 1982 order of abandonment terminated all proceedings as to the Bank for purposes of this section. The court reasoned that the purpose of § 9–403(2) is largely to protect the trustee (Tr. 40), and that the policies allowing creditor inaction are therefore inapplicable once the trustee has abandoned all interest in the collateral.

■ The parties' briefs and this court's research disclose no cases which address the meaning of "termination of bankruptcy proceedings" in § 9–403(2). Under Illinois rules of statutory interpretation, however, clear and unambiguous statutory language should be given its ordinary meaning. *Mack v. Seaman,* 113 Ill.App.3d 151, 68 Ill.Dec. 820, 446 N.E.2d 1217, 1219 (1st Dist.1983); *Available Iron & Metal Co. v. First National Bank,* 56 Ill.App.3d 516, 13 Ill.Dec. 940, 371 N.E.2d 1032, 1039 (1st Dist.1977). This rule of construction has special weight in the commercial context, since the Uniform Commercial Code is expressly designed to promote uniformity and simplification in commercial transactions. Ill.Rev.Stat., ch. 26, § 1–102(2)(a).

Nowhere does the Code or its history indicate that the word "termination" should be interpreted other than by its ordinary meaning, namely the conclusion of any insolvency proceedings initiated by or against the debtor. The American Law Institute Comments on Official Reasons for the 1972 Change refer to § 9–403 as providing for the "continued ... validity of a financing statement until the end of the insolvency proceedings and for 60 days thereafter." Quoted in *In re Chaseley's Foods,* 726 F.2d 303, 309 (7th Cir.1983). The 1962 Uniform Commercial Code had provided for a strict 5 year refiling obligation, and decisional law was in conflict as to whether an intervening bankruptcy petition suspended that obligation. *See Chaseley's Foods,* 726 F.2d at 309; Illinois Code Comment, Ill.Ann.Stat., ch. 26, § 9–403 (Smith-Hurd 1984), at p. 294. The 1972 amendments, adopted by Illinois, were intended to resolve this conflict and to ensure that secured creditors who failed to refile during bankruptcy would not inadvertently lose their liens. Both the goal of protecting creditors and the legislative concern over confusion in the courts compel a literal and unambiguous interpretation of the statute.

As explained in *Chaseley's Foods,* the 1972 amendments were premised on the notion that the rights of pre-petition creditors and the bankruptcy trustee are fixed upon the filing of an insolvency petition. Since the trustee and existing creditors have knowledge of any perfected lien on the date of filing, they need no continuation notice, and the purposes served by § 9–403 are therefore irrelevant. Creditors who advance funds after the financing statement would have expired are similarly unharmed, since the trustee's open and notorious possession of the debtor's property provides sufficient protection. Any refiling obligation during bankruptcy is purely ceremonial. 726 F.2d at 309.

Appellee argues that once the property leaves the hands of the trustee, as occurred here, the trustee's open possession no longer stands as a warning to future creditors, and secured creditors should be required to file continuation statements. Appellee points out that the order of abandonment, by removing the inventory from Universal's estate, terminated the automatic stay of creditor actions with respect to that property. 11 U.S.C. § 362(c)(1). It would therefore not be unreasonable to require renewed compliance with the notice provisions of the Code to accompany the renewed rights obtained by the secured creditor.

■ Appellee's argument proves too much. That it might not be unreasonable to require such refilings is not sufficient reason to impose restrictions onto creditors which the Code does not expressly require. While courts should not interpret statutes to reach absurd results, courts are not free to disregard clear statutory language absent a "clearly expressed legislative intent to the contrary." *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051,

2056, 64 L.Ed.2d 766 (1980). The language of § 9–403 unambiguously suspends the refiling obligation throughout the pendency of insolvency proceedings. Creditors who rely on that language should not be punished simply because a different requirement might be equally reasonable.

Even were this court to agree that "termination of insolvency proceedings" is unambiguous and therefore open to interpretation, appellee's position is still unacceptable. In the present case, the collateral in issue was transferred to Laninga before Universal filed for bankruptcy, and thus was never in the trustee's possession. Were the obligation to refile dependent on the trustee's possession, then the Bank would have had to refile even without an abandonment order. Such a requirement would go directly against the 1972 amendment.

Appellee further presumes that the trustee's abandonment of inventory created a need for renewed notice to future creditors. It is absurd, however, to think that a trustee's abandonment of collateral might induce future creditors to advance loans or be unaware of the Bank's priority. The purpose of § 9–403(2)—to ensure adequate notice of existing liens—is not furthered by requiring refiling after the trustee has openly declared the priority of a secured creditor with respect to certain collateral.

Finally, appellee's position would render the creditor's refiling obligations different from case to case, and thus end up recreating the traps the 1972 amendments were intended to avoid. Under appellee's interpretation of § 9–403, a secured creditor with a blanket security agreement might have to file a continuation statement each time any part of his collateral was abandoned by the debtor. In most cases, such abandonments would not effectively terminate a creditor's interest in the bankruptcy, since the collateral is often insufficient to pay the debt. The possibility that secured creditors would be required to make piecemeal refilings would undermine the clarity and uniformity inherent in the current statutory language.

The potential for confusion and piecemeal refilings can be seen in the present case. At the time the trustee abandoned all interest in Universal's inventory, the clock was no longer a part of that inventory by reason of its earlier sale and was arguably unaffected by the order. The court's order would not have prevented the trustee from seeking to recover the clock in an action for preferential transfer under 11 U.S.C. § 547, however, and it is therefore erroneous to say that all property rights in the clock have been definitively resolved. The theory of § 9–403(2)—that the rights of pre-petition creditors and the trustee are fixed at the time a bankruptcy petition is filed—does not become inoperative simply because an interlocutory bankruptcy order may apparently dispose of a certain piece of property or resolve a particular creditor's rights.

■ For the reasons set forth above, the court concludes that the bankruptcy court erred in holding that an abandonment order is a "termination of insolvency proceedings" within the meaning of § 9–403(2). The FDIC's interest remains perfected, and its rights in the clock take precedence over Laninga Jr.'s as a buyer not in the ordinary course of business. Ill.Rev.Stat., ch. 26, § 9–306(2).

Accordingly, the decision of the bankruptcy court is reversed, and the case is remanded to the bankruptcy court for proceedings consistent with this opinion.

It is so ordered.