In re NARDULLI & SONS
COMPANY, INC., Debtor.

KEYSTONE ACCEPTANCE
CORPORATION, Plaintiff,

v.

NARDULLI & SONS COMPANY, INC.
and Carlota M. Bohm, Trustee,
Defendants.

Bankruptcy No. 80–1723.
Adv. No. 86–0248.

United States Bankruptcy Court,
W.D. Pennsylvania.

Nov. 3, 1986.

See also, Bkrtcy., 66 B.R. 871.

Barbara A. Fure, J. Kent Culley, Tucker Arensburg, P.C., Pittsburgh, Pa., for plaintiff.

Carlota M. Böhm, Schaffler and Böhm, Pittsburgh, Pa., trustee.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

On April 30, 1986, Keystone Acceptance Corporation ("Keystone") filed a Complaint to Determine Validity of Liens and to Direct Trustee to Turn Over Proceeds. This adversary proceeding is a companion to Adversary No. 86–0102, brought by General Electric Credit Corporation ("GECC") against the Debtor, Nardulli & Sons Company, Inc. ("Nardulli"), and the Trustee. Both adversaries involve identical issues. This Memorandum Opinion incorporates the Conclusions of Law in the GECC Memorandum Opinion, 66 B.R. 871. In the GECC adversary, the Court held that some of the Debtor's equipment, collateral on secured transactions with GECC, vested in the Debtor upon consummation of the confirmed Chapter 11 plan. The Debtor's confirmed plan did not explicitly provide for GECC maintaining its security interest in the collateral. This may have been inadvertant. The Court did not rest its holding on this issue alone. More importantly, the Court found that GECC did not remain perfected because after consummation of the plan, GECC did not file financing statements in the state of Indiana or in Butler County, Pennsylvania. The Court believes that the Uniform Commercial Code of Indiana and Pennsylvania required GECC to continue or refile financing statements. The Court held that when conversion of the case occurs after the consummation of a confirmed Chapter 11 plan, the Trustee's rights as a hypothetical lien creditor under 11 U.S.C. § 544 accrue as of the date of conversion and not the original filing date of the plan.

Likewise, in this instant adversary, Keystone did not expressly retain a security interest in the collateral, and Keystone did not remain perfected by filing financing statements in the state of Indiana or in Butler County, Pennsylvania. Keystone advances the same legal arguments as

GECC. The Court reaches the same legal result as in the GECC Opinion.

However, Keystone relies on additional cases to support its argument that the Trustee's rights under 11 U.S.C. § 544 revert back to the date of filing of the Chapter 11 petition pursuant to 11 U.S.C. § 348 of the Bankruptcy Code. The Court will review these cases.

## FINDINGS OF FACT

On October 22, 1980, the Debtor, a strip mining operator, filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. On November 29, 1983, the Court confirmed the Debtor's Chapter 11 plan. The plan was consummated by payment of administrative expenses and by substantial payments to creditors. Taxes were not paid. On January 8, 1986, on motion of the taxing bodies, the case was converted to a Chapter 7 and a Trustee appointed.

Between June 20, 1977 and January 15, 1979, the Debtor entered into nine transactions with L.B. Smith ("Smith") supported by Promissory Notes and Sales-Security Agreements. Smith loaned Nardulli $503,-145.43. The Promissory Notes and Security Agreements were assigned by Smith to Keystone from 1977 to 1979. Under the Security Agreements, Nardulli granted Keystone a security interest in 21 pieces of equipment ("the equipment") that are used in the strip mining of coal. These Security Agreements were consolidated by a Modification Agreement dated April 14, 1979, which was later modified on September 20, 1980 and on September 22, 1980.

Keystone originally perfected its security interests in the equipment by filing financing statements in the years 1977–79 with the Secretary of the Commonwealth of Pennsylvania and with the Prothonotary of Allegheny County. Keystone did not file any continuation statements to these. In addition, it did not file any additional financing statements in Butler County, Pennsylvania or in the state of Indiana for its security agreements.

By Order of Court dated October 7, 1981 and effective November 2, 1981, the Bankruptcy Court approved a Stipulation between the Debtor and Keystone that affirmed Keystone's security interest in the equipment. It also authorized the Debtor to grant Keystone a security interest in additional equipment: a conveyor, a stacker conveyor, an off-highway truck, and a grader. Keystone did not file any financing statements as to the additional security.

Article 1, Part A, Paragraph 2 of the plan only states:

> Keystone Acceptance Corporation ("Keystone"), secured by assets of Debtors, shall be designated as the sole Class 2 claimant.

Although the plan provides a payment schedule to Keystone, the plan does not expressly provide that Keystone retains any security interest in the equipment.

Nardulli's plan of reorganization provides that the Bankruptcy Court will retain jurisdiction after consummation date of the plan for all purposes until the Class 13 claimants, the unsecured creditors, are paid as provided under the plan. The plan provides that the consummation date is 30 days after the Order of Court confirming the plan becomes final and nonappealable. On November 29, 1983, the Court confirmed the plan and thus consummation would have occurred on December 29, 1983. Nardulli's Disclosure Statement, filed in August, 1983, discloses that Nardulli obtained a contract to mine coal in the state of Indiana and that it would start operations there once it obtained the required Indiana permits.

In support of its Complaint, Keystone deposed James A. Nardulli, president of Nardulli. This deposition recites the same facts stated in the affidavit of James A. Nardulli filed by GECC in Adversary No. 86–0102. They recite that Nardulli maintained a place of business at 947 Butler Street, Etna, Allegheny County until October, 1983, when it closed its Allegheny County office. Nardulli had also maintained a place of business in Washington County until June, 1984. Nardulli opened a

place of business in Butler County in March, 1982 and closed it in January, 1986. Thus, the only place of business Nardulli maintained from June, 1984 until January, 1986 was in Butler County. Nardulli originally owed Keystone $503,145.43. Keystone now claims $175,966.49 plus legal fees, court costs and interest.

The parties filed a Pretrial Stipulation, which recited that in 1983, Nardulli moved three Wemco pumps and a Caterpillar grader to Butler County, Pennsylvania. Also in 1983, the Debtor moved an off-highway truck to the state of Indiana. The remainder of this equipment remains in Washington County. All this equipment was collateral in Keystone's security agreements with Nardulli. After the plan was confirmed, Nardulli leased the truck and other equipment to an Indiana corporation, Whole Nine Yards Coal Company, Inc. ("WNY"). According to the lease, WNY serviced, maintained and repaired the equipment. WNY also placed an Indiana artisan's lien on the truck as well as on other Nardulli equipment on April 11, 1986. On June 11, 1986, the Trustee conducted a bidding sale of this equipment. WNY was the highest bidder. The Trustee sold the equipment for $250,000. Payments were to be made in installments. GECC has appealed this sale to the District Court. The Butler County equipment remains unsold.

Additionally, WNY has filed for bankruptcy in the state of Indiana and has listed this artisan's lien as an asset. WNY filed after the conversion date of Nardulli to Chapter 7.

The parties also stipulated sometime prior to conversion of this case to Chapter 7, the Debtor sold a New Eagle 36" × 25" Fine Material Screw. This machinery was security for one of Keystone's transactions with the Debtor. After conversion, proceeds of the sale in the amount of $14,552.24 were given to the Trustee. The Trustee deposited these proceeds in an insured money fund in Pittsburgh National Bank. Keystone has made several demands upon the Trustee to turn over the proceeds. The Trustee has refused and argues that Keystone has no legal interest in the proceeds.

## CONCLUSIONS OF LAW

This Opinion incorporates the Conclusions of Law in the GECC Opinion.

Keystone admits in argument that a conversion under 11 U.S.C. § 348 of the Bankruptcy Code ("Code") does not revoke Nardulli's confirmation order. Rather, Keystone argues that a conversion does not change the date of the commencement of the case for purposes of determining the Trustee's rights as to the equipment. Keystone argues that the Trustee's rights would arise on the filing date of Nardulli's Chapter 11, on October 22, 1980, when in fact Keystone was a perfected creditor.

Keystone's theory gives no effect to 11 U.S.C. §§ 1141(a), (b), and (c). Nor does Keystone's theory address the Uniform Commercial Code which requires creditors to perfect their security interests when the automatic stay under Section 362(a)(4) is lifted by Nardulli's discharge under Section 1141(d)(1)(A).

The first issue, as in the GECC case, is whether the Order confirming Nardulli's plan and the plan itself retain Keystone's security interest. The plan does not explicitly provide for Keystone's security interest. This may have been inadvertant.

The second issue is after confirmation of Nardulli's Chapter 11 plan, whether Keystone must comply with the filing requirements of the Uniform Commercial Code to remain perfected.

Post-confirmation, WNY placed an artisan's lien on the Nardulli Indiana equipment. Under Keystone's analysis, Keystone's perfected security interest would not only defeat the Trustee's rights but also defeat WNY's artisan's lien. This Court believes that consummation of the plan discharges Nardulli's pre-confirmation debts and replaces those former contracts with the provisions of the plan. This change can not be easily undone.

Keystone argues that it retained its security interest because the plan was not fully consummated, the estate was not ful-

ly administered, and the case not closed pursuant to 11 U.S.C. § 350(a), and Bankruptcy Rules 3022, 5009, and 2015. Keystone concludes that the confirmation of the Debtor's Chapter 11 plan did not alter any of its security agreements. More importantly Keystone argues that it was not was not required to file continuation or financing statements under the relevant UCC law.

Keystone's theory does not distinguish the administrative closing of the case under the Bankruptcy Code and with "termination of insolvency proceeding" within the meaning of Pennsylvania's Uniform Commercial Code. 13 Pa. C.S.A. § 9403(b). Under 13 Pa. C.S.A. § 9403(b), Keystone remained perfected for 60 days after "termination of the insolvency proceeding." This Court holds that "termination" occurred upon consummation of Nardulli's Chapter 11 plan on December 29, 1983. Sixty days thereafter, Keystone had to comply with the UCC requirements to file financing and or continuation statements to remain perfected.

The automatic stay, 11 U.S.C. § 362(a)(4), stays creditors from filing financing or continuation statements. Upon confirmation of the Chapter 11 plan, the Debtor is discharged of pre-confirmation debts. 11 U.S.C. § 1141(d)(1)(A). The automatic stay is lifted as to the creditor's requirements under state law to perfect its lien and security interests. 11 U.S.C. § 362(c)(2)(C). After confirmation, a creditor may enforce its rights under the plan and the Uniform Commercial Code.

Nardulli operated under a confirmed Chapter 11 plan for three years before its case was converted. Many confirmed Chapter 11 debtors operate for longer periods of time before a case is closed or converted. The administrative closing of a case in not an event of certitude. The confirmation of a plan is a precise event. Important UCC policy goals concerning the certainty of perfection and adequate notice for creditors of existing security interests to creditors are at stake. No important bankruptcy policy would be served by re-lieving the debtor or creditor of the UCC notice requirements after a Chapter 11 confirmation.

A confirmed plan that has been consummated vests property in the debtor subject to the plan. It becomes the law of the case. See *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983); *White v. Murtha*, 377 F.2d 428, 431–432 (5th Cir.1967); 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.404 (1985); and Epstein, "Consequences of Converting a Bankruptcy Case," 60 Am. Bank. L. J. 339, 353 (1986).

It is important to treat these acts with finality. To undo these acts and not treat them with finality would raise uncertainly with regard to future creditors and to perfection under the UCC. It does not have compensative Bankruptcy policy benefits.

The Debtor cites several cases to support its conclusion that Keystone retained a security interest in the equipment. In *In re Laninga*, 51 B.R. 199 (W.D.Ill.1985), the District Court held that the Trustee's order abandoning collateral was not a "termination of insolvency proceedings" within the meaning of Section 9–403(2) of the Illinois Uniform Commercial Code. In *Laninga* the secured creditor's interest remained perfected although the creditor had not filed any continuation statements after the termination of the relevant five-year period. *Laninga* involved a Chapter 13 plan whereas Nardulli operated under a Chapter 11 confirmed plan. The discharge of the debtor does not occur upon the confirmation of a Chapter 13 plan but upon the completion of the plan. 11 U.S.C. § 1328(a). *Laninga* did not involve a conversion, nor did it involve the UCC requirements to file continuation or financing statements in other counties or states where property is moved.

Keystone also cites *Matter of Silver Mill Frozen Foods, Inc.*, 23 B.R. 179 (Bkrtcy.D. Mich.1982), where a Chapter 11 case was not closed upon confirmation, and thus the secured party was not required to file financing statements. The Bankruptcy Court held that upon conversion of a Chap-

ter 11 to Chapter 7, the Trustee was not barred from bringing preference actions. The case was not "closed or dismissed" under 11 U.S.C. § 546(a)(2). These provisions of this section have very different purposes than the "termination" provision of 13 Pa. C.S.A. § 9403(b) of the Pennsylvania UCC which by notice requirements protects potential creditors of the debtor.

Keystone also relies upon *In re Dennis*, 31 B.R. 128 (Bkrtcy.M.D.Ga.1983), where a Chapter 13 case converted to Chapter 7. The Debtor had paid the secured portion of the creditor's claim and sought to avoid a lien under Sections 522(f) and 522(d)(3) of the Code. *Dennis* involved very different issues. Secured creditors are treated differently under a Chapter 13 confirmed plan than under a confirmed Chapter 11 plan. 11 U.S.C. § 1325(a)(5) protects the secured party whose collateral is treated by the plan. Collier describes the effect of this section for secured creditors:

> The practical effect of requiring a lien retention provision in the plan is to protect the holder of an allowed secured claim from loss occasioned by a later failure on the part of the debtor to complete the proposed plan, since absent such a provision, the lien may be eliminated upon confirmation by the vesting of all property of the estate in the debtor.

Collier on Bankruptcy ¶ 1325.06[a] at 1325–32 (15th ed. 1986)

A Chapter 11 discharges the debtor at consummation. 11 U.S.C. § 1141(d)(1)(A). In a Chapter 13, discharge occurs after completion of the planned payments. 11 U.S.C. § 1328(a). A Chapter 13 plan must provide for the secured liens. A Chapter 11 plan need not retain pre-confirmation secured liens. The Chapter 13 analysis in *Dennis* is not appropriate for a confirmed Chapter 11 that converts.

If the Nardulli Chapter 11 plan retained Keystone's security interests, then Keystone was required to comply with the filing requirements under the UCC of Pennsylvania and Indiana to continue perfection. Keystone failed to file financing state-

ments in the state of Indiana and in Butler County, Pennsylvania. Thus, Keystone's security interest became unperfected. Upon conversion, the Trustee has a superior interest to an unperfected creditor. 11 U.S.C. § 544. The Court denies Keystone the relief requested in its Complaint.

An appropriate Order will issue.